UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| BARBARA M. BLEVINS, | ) | No. CV 05-03244-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner ("AR"). The parties have filed their pleadings and supporting memoranda, and the Commissioner has filed the certified AR. After reviewing the matter, the Court concludes that the decision of the Commissioner must be reversed. The matter will be remanded for calculation and award of benefits.

This case has a somewhat complicated procedural history. Plaintiff initially filed applications for Disability Insurance Benefits and Supplemental Security Income in 1996, and ultimately had a hearing before an Administrative Law Judge ("ALJ") in 1998. After receiving an adverse decision, Plaintiff filed additional applications for Supplemental Security Income which again were administratively denied. She had another hearing in 2002, at which time she represented herself, and then a supplemental hearing several months later, at which time she was assisted by her sister. (See AR at 74-78 and 79-95.) At each hearing, Plaintiff appeared and was the only witness. In a written decision (AR 26-35), the ALJ found Plaintiff to be not disabled, and in fact, able to perform her past relevant work.

**MENTAL IMPAIRMENT**

In his decision, the ALJ gave the medical expert ("ME"), Dr. Lunianski, "controlling weight" in concluding that Plaintiff did not suffer from a disabling mental impairment. (See AR at 30.) The ALJ referred to a form completed by the ME on June 14, 2002 (see AR at 490-497); however, the ALJ, and now the Commissioner, ignored the fact that the ME restricted himself to the period of only 1996 in describing Plaintiff's mental impairments and their consequent functional limitations. (See AR at 496.) For that reason alone, it would be inappropriate to rely upon the ME's opinion, since it completely fails to address other and more recent reports of examiners which are pertinent to the issue of mental impairment (these will be discussed in the body of this Opinion).

When Dr. Diamond examined and tested Plaintiff as part of a consultative examination ("CE") on October 21, 1996, he performed

2

standardized testing which revealed a full scale IQ of 60. Dr. Diamond found no malingering, although he noted that Plaintiff "does not try very hard and she shows little interest in the process." (AR 181.) Nevertheless, he found that all of Plaintiff's scores "fall well within the range of intellectual retardation." (Id.) He found her to be cooperative with the exam. His IQ findings are consistent with the following observations rendered in his report:

> "She has no fund of general knowledge and she has gleaned very little from her educational experience. She is unaware of her environment and she has no long term memory for facts. Her ability to concentrate and to recall number sequences is seriously deficient. She has very poor knowledge of word meanings which is consistent with her verbal-interactional skills. She shows no skills at all regarding concentration and awareness of arithmetic concepts. Her common sense reasoning is nil. She does not see relationships between things and ideas. Ms. Blevins is unaware of visual detail and she cannot evaluate socially relevant situations well. Visual motor speed and coordination are poor. She offers no indicators of anxiety affecting her performance and Ms. Blevins is not competent with regard to her visual-motor skills."

(AR 181.)

Apparently focusing on the comment in the report that Plaintiff doesn't try very hard and shows little interest in the process, the ALJ apparently, although not explicitly, rejected Dr. Diamond's IQ test results. (See AR at 30.) This conclusion represents little more

3

than the equivalent of reading tea leaves, since Dr. Gardiner stood by his results from the testing, and his comments can at best be seen as a reflection of Plaintiff's overall limited functioning. For example, he observed that "her vocabulary was poor and, her speech was garbled." (AR 180.)  From his review of the records, the ME determined that Plaintiff suffers from a depressive disorder, NOS (See AR at 490), and it is also significant that the ME rated Dr. Diamond's findings as "well-supported" and "consistent." (See AR at 491.)

Although recognizing that Dr. Diamond found that Plaintiff's IQ scores place her well within the range of intellectual retardation, the Commissioner can find little more to discredit or to depreciate these results than citing Dr. Diamond's observations about Plaintiff's efforts and lack of interest in the process during the test-taking. (See Cross-Motion at 3.)

The full picture regarding Plaintiff's mental impairments becomes clearer when the other examining physicians' reports are examined. Dr. Gardiner examined Plaintiff as a consultative examiner at the request of the SSA on October 10, 2001. (AR 410-420.)  Dr. Gardiner reported significant depression, very serious memory problems, very poor math skills, a low capacity for abstract thought, and intellectual retardation.  He measured her full scale IQ at 56. (AR 414-418.)  It was Dr. Gardiner's opinion that because of her physical problems and her low intellectual functioning, she might have difficulties with even simple and repetitive work. (AR 419.)  While acknowledging Dr. Gardiner's findings, the ALJ's decision provides no reason to reject them. (See AR at 31-32.)  Similarly, in her Cross-Motion, the Commissioner devotes one sentence to Dr. Gardiner's finding that Plaintiff had a "valid" IQ score of 56. (Cross-Motion at

4

3, citing AR 414.)  By focusing on the ME's interpretation of Plaintiff's functional limitations, rather than the IQ score, the ALJ simply glossed over the issue of whether or not Plaintiff met or equaled a Listing, a matter which the Court will address in this Opinion.

Finally, there is the report of examining psychologist Dr. Gayle, who performed a consultative examination at the request of the SSA on May 6, 2000. Dr. Gayle reported a full scale IQ of 54. (AR 458.) Her diagnosis included learning disorder, depression not otherwise specified, and borderline cognitive skills. (AR 459.) This is consistent with her conclusion with regard to the IQ testing that the scores "most likely reflect her limited education, as well as a learning disorder." (AR 458.)  Dr. Gayle noted that Plaintiff appeared to respond "randomly," and because of that, Dr. Gayle questioned whether Plaintiff put forth her best effort, and whether the test results might not reflect her best efforts. (AR 455.)  The ALJ declined to explicitly state whether or not he credited Dr. Gayle's IQ testing, other than simply noting the aforementioned comments. (See AR at 31.) But these comments are consistent with the observations made in 1996 by Dr. Diamond, who noticed that Plaintiff's speech was poor and mildly pressured, that she spoke poorly, and had a habit of mumbling, repeating herself and then just trailing off. (See AR at 180.)   Further, while Dr. Gardiner did not record any such observations about Plaintiff's behavior and functioning, he determined that her full scale IQ was 56.  In addition, the ME found that, as to Dr. Gardiner and Dr. Gayle, their findings, as with Dr. Diamond's, were well-supported and consistent. (See AR at 491.)

In sum, there is no substantial evidence in the record which

serves to detract from the validity of the IQ scores recorded by the examining physicians. The ME's assessment cannot serve as substantial evidence to rebut or contradict these findings. The ME did not testify, and nothing in his written report can be read as a rejection of the IQ findings of the examining sources. Further, in his decision, although the ALJ mentioned Listing 12.05B (see 20 C.F.R. Part 404, Subpart P, App. 1, section 1205(b)), no discussion is there devoted to the particular issue of whether Plaintiff's IQ scores place her within this Listing, other than a conclusion in the Findings that she does not meet or equal any of the Listings. (See AR at 34, Finding 4.)  It is clear, however, that Plaintiff does meet the Listing, based on substantial medical evidence in the record. On this basis, the ALJ's decision will be reversed, and the matter will be remanded for calculation and award of benefits. The Court sees no need to remand for a new hearing, in view of the clear evidence in the record that Plaintiff meets this Listing. While the ALJ purported to rely upon the opinion of the ME as controlling, this is impermissible. The applicable rule is succinctly stated in Morgan v. Apfel, 169 F.3d 595, 602 (9th Cir. 1999):

> "The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician. (citations omitted)  In Gallant [Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)], we determined that 'the report of [a] nontreating, nonexamining physician, combined with the ALJ's own observation of [the] claimant's demeanor at the hearing,' did not constitute substantial evidence and, therefore, did not support the Commissioner's

1 | rejection of the examining physician's opinion that the
2 | claimant was disabled.  <u>Gallant</u>, 753 F.2d at 1456.  In
3 | <u>Pitzer</u> [<u>Pitzer v. Sullivan</u>, 908 F.2d 502 (9th Cir. 1990)],
4 | we held that the nonexamining physician's opinion 'with
5 | nothing more' did not constitute substantial evidence.
6 | But we have consistently upheld the Commissioner's
7 | rejection of the opinion of a treating or examining
8 | physician, based *in part* on the testimony of the
9 | nontreating, nonexamining medical advisor. [citations
10 | omitted]  In <u>Magallanes</u> [<u>Magallanes v. Bowen</u>, 881 F.2d 747
11 | (9th Cir. 1989)], evidence that supported the ALJ's
12 | determination included, among other things, testimony from
13 | the claimant that conflicted with her treating physician's
14 | opinion." [Citation omitted.]
15 | (169 F.3d at 602.)
16 |
17 | Because the Court finds ample and sufficient reason to reverse
18 | and award benefits based on the fact that Plaintiff's mental
19 | impairment qualifies under Listing 1205B, the Court will not address
20 | the remaining issues raised in Plaintiff's Motion.
21 | //
22 | //
23 | //
24 | //
25 | //
26 | //
27 | //
28 | //

7

For the foregoing reasons, the Court grants Plaintiff's Motion for Summary Judgment, denies Defendant's Cross-Motion for Summary Judgment, and orders that this matter be reversed and remanded for calculation and award of benefits.

**IT IS SO ORDERED.**

DATED: March 20, 2006

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE